Samuel R. Watkins (SBN 272162)
swatkins@thompsoncoburn.com
THOMPSON COBURN LLP
2029 Century Park East, Suite 1900
Los Angeles, California 90067
Tel:  310.282.9451/Fax: 310.282.2501

-and-

Douglas J. Sorocco (Okla. Bar No.
17347, Ill. ARDC No. 2381747)
*pro hac vice* pending
Evan W. Talley (Okla. Bar No. 22923)
*pro hac vice* pending
dsorocco@dunlapcodding.com
etalley@dunlapcodding.com
**DUNLAP CODDING PC**
609 West Sheridan Avenue
Oklahoma City, OK 73102
Tel: 405.607.8600/Fax: 405.607.8686

-and-

Jordan A. Sigale (Ill. ARDC No.
6210047) - *pro hac vice* pending
jsigale@dunlapcodding.com
**DUNLAP CODDING PC**
225 West Washington St., Ste. 2200
Chicago, IL 60606
Tel: 312.651.6744

**Attorneys for Plaintiffs**
**JAMIE S. LEACH and**
**LEACHCO, INC.**

VERIFIED COMPLAINT - 1

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION (LOS ANGELES)

JAMIE S. LEACH, an individual;
and LEACHCO, INC., an Oklahoma
corporation;

     Plaintiffs,

       v.

DAY TO DAY IMPORTS, INC., a
California corporation; OXGORD,
INC., a California corporation;
TRULY COMMERCE, INC., a
California corporation;
PHARMEDOC, INC., a California
corporation; YAKOV KROLL, an
individual; ELI KROLL, an
individual; YEHUDA
NOUROLLAH, an individual;
AKIVA NOUROLLAH, an
individual; YOSEF NOUROLLAH,
an individual; YAAKOV
NOUROLLAH, an individual; and
JOHN DOES 1-10;

     Defendants.

Case No. 2:17-CV-07351

**VERIFIED COMPLAINT**

Plaintiffs, Leachco, Inc. and Mrs. Jamie Leach, for their claims and relief against Day to Day Imports, Inc., Oxgord, Inc., Truly Commerce, Inc., Pharmedoc, Inc., Mr. Yakov Kroll, Mr. Eli Kroll, Mr. Yehuda Nourollah, Mr. Akiva Nourollah, Mr. Yosef Nourollah, Mr. Yaakov Nourollah, and John Does 1-10 allege, as follows:

VERIFIED COMPLAINT - 2

## NATURE OF THE ACTION

1.     This action arises from one or more of Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Mr. Yakov Kroll; Mr. Eli Kroll; Mr. Yehuda Nourollah; Mr. Akiva Nourollah;, Mr. Yosef Nourollah; Mr. Yaakov Nourollah; and John Does 1-10 directly infringing U.S. Patent No. 6,499,164 and/or actively and knowingly inducing one or more of their co-Defendants, including Defendant Pharmedoc, Inc., to infringe the '164 Patent by selling and/or offering to sell in the United States, and/or importing into the United States a Full Body Pregnancy Pillow manufactured in China by non-party Saint Glory Hometextile Co., Ltd.

2.     This action further arises from the foregoing Defendants and Defendant Pharmedoc using false designations of origin—as well as false and misleading representations of fact—in connection with the sale and marketing of the infringing Full Body Pregnancy Pillow (hereinafter the "StGL Pillow") in interstate commerce. Such statements are intended to (i) deceive consumers into believing that there is an affiliation between Defendants and Plaintiff Leachco, and (ii) misrepresent the nature, characteristics, or qualities of the infringing StGL Pillow versus Leachco, Inc.'s Snoogle® Total Body Pillow. Furthermore, Defendants, including Defendant Pharmedoc, are unfairly competing with Plaintiff Leachco in violation of California Business & Professions Code Section

VERIFIED COMPLAINT - 3

17200 and California Common Law Unfair Competition.

## THE PARTIES

3.     Plaintiff Leachco, Inc. is an Oklahoma corporation that manufactures, distributes, and markets the Snoogle® Total Body Pillow, among other products, through various third-party outlets including Amazon.com, Bed Bath & Beyond, Babies R Us, Walmart, and Destination Maternity.

4.     Plaintiff Jamie Leach is a resident of Oklahoma and is the sole inventor of U.S. Patent No. 6,499,164. Mrs. Leach is a co-founder and current Executive Vice President of Plaintiff Leachco, as well as the owner of the '164 patent. A true and correct copy of the '164 patent is attached to this Verified Complaint as Exhibit 1.

5.     Defendant Day to Day Imports, Inc. is a corporation organized under the General Corporation Law of California, with a principal place of business at 16325 South Avalon Boulevard, Gardena, CA 90248.

6.     Defendant Oxgord, Inc. is a corporation organized under the General Corporation Law of California, with a principal place of business at 16325 South Avalon Boulevard, Gardena, CA 90248.

7.     Defendant Truly Commerce, Inc. is a corporation organized under the General Corporation Law of California, with a principal place of business at 16325 South Avalon Boulevard, Gardena, CA 90248.

8.      Defendant Yakov Kroll, also known as Jack Kroll, is an individual residing at 132 N. Alta Vista Blvd., Los Angeles, CA 90036. According to the most recent filings with the California Secretary of State, Mr. Yakov Kroll served as Chief Executive Officer and Director of Defendant Pharmedoc, Inc.

9.      Defendant Eli Kroll is an individual residing at 147 S. Citrus Ave., Los Angeles, CA 90036. Mr. Eli Kroll is the Chief Operating Officer of Defendant Pharmedoc, Inc.

10.     Defendant Yehuda Nourollah is an individual residing at 1534 S. Shenandoah St., Apt. 2, Los Angeles, CA 90035. According to the most recent filings with the California Secretary of State, Mr. Yehuda Nourollah served as Secretary of Defendant Day to Day Imports, Inc.; Chief Executive Officer, Secretary, Chief Financial Officer, and Director of Defendant Oxgord, Inc.; and Chief Executive Officer, Secretary, and Director of Defendant Pharmedoc, Inc.

11.     Defendant Akiva Nourollah is an individual residing at 923 S. Wooster St., Apt. 4, Los Angeles, CA 90035. According to the most recent filings with the California Secretary of State, Mr. Akiva Nourollah served as Chief Executive Officer and Chief Financial Officer of Defendant Day to Day Imports, Inc.; Chief Financial Officer of Defendant Pharmedoc, Inc.; and Initial Agent, Chief Financial Officer of Defendant Truly Commerce, Inc.

12.     Defendant Yosef Nourollah, also known as Joseph Nourollah, is an individual residing at 201 S. Le Doux Rd., Beverly Hills, CA 90211. According to the most recent filings with the California Secretary of State, Mr. Yosef Nourollah served as Chief Executive Officer, Director of Defendant Day to Day Imports, Inc.; and Director of Defendant Pharmedoc, Inc.

13.     Defendant Yaakov Nourollah is an individual residing at 1500 S. Crest Dr., Los Angeles, CA 90035. According to the most recent filings with the California Secretary of State, Mr. Yaakov Nourollah served as Chief Financial Officer of Defendant Day to Day Imports, Inc.

14.     Defendant Pharmedoc, Inc. is a corporation organized under the General Corporation Law of California, with a principal place of business at 16325 South Avalon Boulevard, Gardena, CA 90248.

15.      Plaintiffs are ignorant of the true names of the Doe Defendants 1 - 10 and therefore sues those defendants by such fictitious names. Plaintiffs believe along with Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yehuda Nourollah, Yosef Nourollah, Akiva Nourollah, Yaakov Nourollah, Yakov Kroll, and Eli Kroll, that the Doe Defendants are responsible for the acts alleged in this Verified Complaint, as will likely be further shown after a reasonable opportunity for discovery. When the true names of such fictitious defendants are ascertained, Plaintiffs will seek leave of this

Court to amend this Verified Complaint to name those individuals or entities.

16.    At all times relevant hereto each of the Defendants acted in concert with each other, was the agent, affiliate, officer, director, manager, principal, alter-ego, co-conspirator, aider and abettor, or employee of the other Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship or employment; and actively participated in, subsequently ratified and adopted, or both, each and all of the acts or conducts alleged, with full knowledge of all the facts and circumstances of each and every wrongful act and Plaintiffs' damages caused therefrom, as will likely be further shown after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

17.    This is an action for infringement of a United States Patent arising under 35 U.S.C. §§ 271(a)-(b), 281, and 284-85; violations of the Federal Lanham Act, arising under 15 U.S.C. §1051 et seq.; violations of California Business & Professions Code §17200; and violations of California Common Law Unfair Competition.

18.    This Court has subject matter jurisdiction over the Patent and Lanham Act Claims set forth in this Verified Complaint pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338(a)-(b). In view of this subject matter jurisdiction over these Federal Question claims, this Court further has supplemental jurisdiction

over Cal Bus. & Prof. Code §17200 and California Common Law Unfair Competition pursuant to 28 U.S.C. §1367.

19.     Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; and Pharmedoc, Inc. are each independently subject to this Court's personal jurisdiction because each is a corporation formed under California law, each has a principal place of business within this Judicial District, and each has and continues to conduct substantial business within this Judicial District, including actions that constitute (i) direct and/or indirect patent infringement, (ii) violation of the Lanham Act, and/or (iii) unfair competition as alleged herein and as will likely be further shown after a reasonable opportunity for discovery.

20.     Defendants Yakov Kroll, Eli Kroll, Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah, and Yaakov Nourollah are each subject to this Court's personal jurisdiction because each resides within this Judicial District.

21.     Pursuant to 28 U.S.C. §1400(a), venue is proper in this Judicial District—with respect to Counts I and II of this Verified Complaint—over Defendants Yakov Kroll, Eli Kroll, Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah, and Yaakov Nourollah because each is a resident of this Judicial District and has committed a substantial part of the events giving rise to claims of patent infringement in this Judicial District, as will likely be shown after a

reasonable opportunity for discovery.

22.    Pursuant to 28 U.S.C. §1400(a), venue is proper in this Judicial District—with respect to Counts I and II of this Verified Complaint—over Defendants Does 2-10 because each individual has committed a substantial part of the events giving rise to claims of patent infringement in this Judicial District, as will likely be shown after a reasonable opportunity for discovery.

23.    Pursuant to 28 U.S.C. §1400(b), venue is proper in this Judicial District—with respect to Counts I and II of this Verified Complaint—over:

      a.    Defendant Day to Day Imports, Inc., which is both a corporation organized under California law and has a regular and established place of business in this Judicial District;

      b.    Defendant Oxgord, Inc., which is both a corporation organized under California law and has a regular and established place of business in this Judicial District;

      c.    Defendant Truly Commerce, Inc., which is both a corporation organized under California law and has a regular and established place of business within this Judicial District; and

      d.    Defendant John Doe 1 is a legal entity which at least has a regular and established place of business in this Judicial District, as will likely be shown after a reasonable opportunity

for discovery.

24.     Pursuant to 28 U.S.C. §1391(a), venue is proper in this Judicial District—with respect to Counts V, and VI of this Verified Complaint—over Defendants Yakov Kroll, Eli Kroll, Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah, and Yaakov Nourollah because each is a resident of this Judicial District and has committed a substantial part of the events giving rise to the Lanham Act, unfair competition, and Section 17200 claims in this Judicial District, as will likely be shown after a reasonable opportunity for discovery.

25.     Pursuant to 28 U.S.C. §1391(a), venue is proper in this Judicial District—with respect to Counts V, and VI of this Verified Complaint—over Defendants Does 2-10 have committed a substantial part of the events giving rise to the Lanham Act, unfair competition, and Section 17200 claims in this Judicial District, as will likely be shown after a reasonable opportunity for discovery.

26.     Pursuant to 28 U.S.C. §1391(c), venue is proper in this Judicial District—with respect to Counts III-IX of this Verified Complaint—over:

        a.      Defendant Pharmedoc, Inc. because it is a corporation organized under California law with a principal place of business in this Judicial District that is doing and transacting business within this Judicial District in such a way as to mislead and/or confuse prospective purchasers both within and

without this Judicial District, which forms the basis for Plaintiff Leachco's Lanham Act, California Business & Professions Code Section 17200, and unfair competition claims;

b.    Defendant Day to Day Imports, Inc. is a corporation organized under California law with a principal place of business in this Judicial District that is doing and transacting business within this Judicial District in such a way as to mislead and/or confuse prospective purchasers both within and without this Judicial District, which forms the basis for Plaintiff Leachco's Lanham Act, Section 17200, and unfair competition claims, as will likely be shown after a reasonable opportunity for discovery;

c.    Defendant Oxgord, Inc. is a corporation organized under California law with a principal place of business in this Judicial District that is doing and transacting business within this Judicial District in such a way as to mislead and/or confuse prospective purchasers both within and without this Judicial District, which forms the basis for Plaintiff Leachco's Lanham Act, Section 17200, and unfair competition claims, as

VERIFIED COMPLAINT - 11

1
2
3

will likely be shown after a reasonable opportunity for discovery;

4
5
6
7
8
9
10
11
12
13

    d.    Defendant Truly Commerce, Inc. is a corporation organized under California law with a principal place of business in this Judicial District that is doing and transacting business within this Judicial District in such a way as to mislead and/or confuse prospective purchasers both within and without this Judicial District, which forms the basis for Plaintiff Leachco's Lanham Act, Section 17200, and unfair competition claims, as will likely be shown after a reasonable opportunity for discovery; and

14
15
16
17
18
19
20
21
22
23

    e.    Defendant John Doe 1 is a legal entity with a principal place of business in this Judicial District that is doing and transacting business within this Judicial District in such a way as to mislead and/or confuse prospective purchasers both within and without this Judicial District, which forms the basis for Plaintiff Leachco's Lanham Act, Section 17200, and unfair competition claims, as will likely be shown after a reasonable opportunity for discovery.

24

VERIFIED COMPLAINT - 12

## **BACKGROUND**

27.     Plaintiff Leachco has a principal place of business in the small town of Ada, Oklahoma (population: approximately 17,000) amidst the rolling hills in the southeastern part of the state.

28.     In or about 1988, Plaintiff Jamie Leach retired from her job as a registered nurse to start Leachco with her husband, Clyde Leach, to manufacture, distribute, and market Jamie's inventions.

29.     Jamie's first invention, the Original Wiggle Wrap, was conceived following a near tragic accident involving one of Clyde and Jamie's sons, Alex.

30.     While travelling, Alex nearly fell out of a highchair that did not have any means of restraint and was luckily caught by his parents without serious harm. The incident, however, left Jamie feeling that she was at the mercy of ill-equipped highchairs found in most restaurants.

31.     Upon returning home from travelling, Jamie gathered sewing materials, tape, dental floss, and a kitchen hand towel to create a prototype of the Original Wiggle Wrap.

32.     The Original Wiggle Wrap caught the attention of other parents and friends in the area and Leachco was born.

33.     Since her creation of the Original Wiggle Wrap, Jamie has continued innovating. She now possesses 38 issued U.S. Patents, including U.S.

Patent No. 6,499,164, the subject matter of which is embodied in the Snoogle®
Total Body Pillow, which is exclusively manufactured and distributed by
Leachco.

34.    Jamie Leach is the owner of all rights, title and interest in and to the
6,499,164 Patent, including the right to recover any and all remedies for current
and past infringement.

35.    Leachco has the exclusive right to practice the '164 Patent, which it
exercises by making, selling and offering for sale the Snoogle® Total Body
Pillow in all of its various covers.

36.    The Snoogle® Total Body Pillow is shown in the following photos:



37.    As shown in these photos, the Snoogle® is a full body maternity
pillow with a horseshoe shaped head that allows the user to attain the position and
height that is right for their comfort. There is also an extra-long midsection,
which is used for back or abdominal support, and a slightly curved end that may
be tucked between the knees of the user to conform to the body's shape while
keeping the user's body cool and comfortable.

VERIFIED COMPLAINT - 14

38.     Since its introduction in late 1999, the Snoogle® has become iconic–completely transforming the market for maternity pillows by providing a new and unique design for a pillow that anatomically conformed to the human body from head to toe.

39.     The Snoogle® Total Body Pillow is by far Leachco's best-selling product, accounting for a significant portion of Leachco's annual sales since its introduction in late October 1999.

40.     The Snoogle® is manufactured, sold, and offered for sale in a number of different types, which differ primarily in the type of cover material used (e.g. 65% polyester/35% cotton blend, 100% cotton, 100% organic cotton), whether the cover is removable, and closure application (e.g. zipper or sham style), but not in their fundamental patented shape. Leachco currently sells, among other versions, the Snoogle® Total Body Pillow in Original (Ivory), Basic, Chic, Chic Jersey, Chic Organic, and Chic Supreme.

41.     Plaintiff Leachco sells its products, including the Snoogle® Total Body Pillow, via third party retailers such as Amazon.com, Bed Bath and Beyond, Toys 'R Us, Destination Maternity, and Nordstrom.

42.     A true and correct copy of the "Leachco Snoogle® Total Body Pillow, Ivory" product page (as it appeared on Amazon.com on 09/20/2017) is reproduced below. This product page states that the Snoogle® Total Body Pillow

is the #1 Best Seller in "Body Pillows" category on Amazon.com and averages 4.3 out of 5 stars based on 8,168 customer reviews.



43.     Today, Leachco is still a family business. Alex Leach (the infant inspiration for Jamie's first invention) now runs the business as its Chief Operating Officer. Jamie, Clyde, younger brother Andrew, and sister Mabry are also involved in the company.

44.     Over the last five years, Leachco has maintained an average work force of about 100 individuals, counting full-time and part-time employees. In recent years, that number has risen to between 125 and 130 employees and, at times, as many as 150—depending upon sales demand—to manufacture, distribute, and market its products as well as innovating new products—all from the small Oklahoma town of Ada.

45.     Leachco is known locally as one of the larger, key employers in the City of Ada and Pontotoc County. Located in the middle of downtown Ada, it has

been a staple of the community for decades and has many employees who have worked with the company for more than 10 years.

## THE PATENT INFRINGEMENT

46. Other full body pregnancy pillows are available for purchase on Amazon.com and elsewhere. Most of the other pregnancy pillows do not directly compete with Leachco's Snoogle® Total Body Pillow.

47. One full body pregnancy pillow that does compete directly with the Snoogle® is presently being sold on Amazon.com under the product name "PharMeDoc Full Body Pregnancy Pillow - Baby Nursing Cushion & Maternity Pillow for Pregnant Women - Belly & Back Support Cushion with 100% Cotton Pillow Cover - C Shaped." (A true and correct copy of the Amazon.com product page for this competitive product is reproduced below (accessed via the internet on October 4, 2017 at https://www.amazon.com/PharMeDoc-Full-Body-Pregnancy-Pillow/dp/B0153X1M14).



48.    An internet search for "PharMeDoc Full Body Pregnancy Pillow" leads to—among other internet pages—to the website www.Pharmedoc.com, which includes a product named "PharMeDoc Full Body Pregnancy Pillow (C Shape)." A true and correct copy of the webpage for this product is reproduced below (accessed via the internet on October 4, 2017 at https://www.PharMeDoc.com/collections/maternity-pillows/products/full-body-pillow-c-shape).



49.    An internet search for, "PharMeDoc Full Body Pregnancy Pillow J Shape" leads to—among other internet pages—a Youtube.com video which includes an image within the video that claims the product is a "Full Body Support with J-Shape Design." A true and correct copy of a video frame at 18 seconds of viewing time is reproduced below (accessed via the internet on

VERIFIED COMPLAINT - 18

October 4, 2017 at https://www.youtube.com/watch?v=1ZIN1OUmE38).



50.     Non-party Saint Glory Hometextile Co., Ltd. manufactures the StGL Pillow.

51.     On December 31, 2002, the United States Patent and Trademark Office duly issued the '164 Patent, entitled "Body Pillow with Horseshoe-shaped top and J-shaped Bottom." A true and correct copy of the '164 Patent is attached as Exhibit 1.

52.     Whether the StGL Pillow is called J-Shaped or C Shaped, is no matter, the pillows are substantially the same and both infringe Claim 1 of the '164 Patent.

53.     In particular, the StGL Pillow is a body pillow which has a top end that is essentially in the shape of a horseshoe for accommodating the upper end of a person (e.g., their head) and a bottom end essentially in the shape of a J for accommodating a lower end of the person (e.g., their legs). The StGL Pillow also

has a substantially cylindrical straight portion connecting the horseshoe-shaped top with the essentially J-shaped bottom. The cross-sectional diameter of the StGL Pillow is about 9 inches (i.e., within a range of between 7 and 12 inches). The essentially horseshoe-shaped top is a semi-toroidal member having about a 26-inch diameter (i.e., within a range of about 25 to 26 inches). The horseshoe shaped top of the StGL Pillow terminates in a foot spaced from the straight portion extending parallel to the straight portion to form a curved opening.

54.    The StGL Pillow additionally infringes Claim 3 of the '164 Patent because when the head of an adult female, lying on her side, is against the horseshoe-shaped end of the StGL Pillow, the hook shaped bottom of the StGL Pillow is received between her legs.

55.    The StGL Pillow also infringes Claim 4 of the '164 Patent because it is comprised of an inner polyester liner and an outer cloth pillowcase, the liner and pillowcase conforming to the shape of the pillow.

56.    The StGL Pillow is offered for sale in an ivory version and a jersey version (collectively referred to hereinafter as "Infringing Goods"). Replacement pillow covers are offered for the StGL Pillow. True and correct copies of photographic images of the ivory and jersey versions of the StGL Pillows, as well as the replacement pillow covers, are shown below and are reproduced from images provided from https://www.pharmedoc.com/collections/maternity-

pillows/products/c-replacement-cover.



57.    In addition to Amazon.com and Pharmedoc.com, the Infringing Goods are also sold and offered for sale through at least the following outlets: Facebook      Marketplace,      Walmart,      Wayfair,      Ebay.com,      and Bedbathandbeyond.com.

58.    In view of this infringement, Plaintiffs commenced a patent infringement lawsuit against Defendant Pharmedoc, Inc. in the U.S. District Court for the Western District of Oklahoma in September 2016 ("Oklahoma Patent Action"). A true and correct copy of the Complaint filed in the Oklahoma Patent Action in September 2016 is attached to this Verified Complaint as Exhibit 2.

59.    At the time that action was filed, sales of the StGL Pillow were not significantly impacting Leachco's Snoogle® sales.

60.    The Oklahoma Patent Action is still ongoing with fact discovery proceeding under a Stipulated Protective Order, which precludes the parties from using discovery from that case for any other purpose. Consequently, Plaintiffs

have not disclosed any of the confidential discovery produced in that action in making the averments set forth in this Verified Complaint.

61.    In August 2017, it became apparent to Leachco that something or someone had caused a significant decline in sales of the Snoogle® in July 2017.

62.    However, discovery in the Oklahoma Patent Action did not explain the type of decline that Leachco experienced in July 2017. So, Leachco conducted an investigation to ascertain the cause of its sudden and dramatic decrease in the market for the Snoogle®.

63.    Following that investigation, Leachco believes that it found itself the unfortunate victim of an elaborate and carefully constructed shell game.

64.    Upon careful re-inspection of the Amazon.com product page for "PharMeDoc Full Body Pregnancy Pillow" (see Paragraph 47 of this Verified Complaint), it appears that an entity by the name of Doctors-Deals, not Defendant Pharmedoc, is purportedly selling the product via Amazon.com.

65.    Upon careful re-inspection of the Walmart.com product page for "PharMeDoc Pregnancy Pillow- C Shaped Body Pillow for Pregnant Women," it appears that an entity by the name of Doctors-Deals, not Defendant Pharmedoc, is purportedly selling the product via Walmart.

66.    Doctors-Deals is not a registered entity, alias, or tradename with the California Secretary of State. In fact, a search of publicly-available databases for

an entity by the name of Doctors-Deals or an entity using Doctors-Deals as its alias or tradename fails to return any information.

67. The merchant page for Doctors-Deals on Amazon.com (accessed via the internet on October 1, 2017 at https://www.amazon.com/sp?_encoding=UTF8&asin=&isAmazonFulfilled=1&isCBA=&marketplaceID=ATVPDKIKX0DER&orderID=&seller=A3C69MOUII7SSD&tab=&vasStoreID=) provides a customer service and returns phone number of 888-575-6158. This phone number matches the phone number provided for customer service on www.Pharmedoc.com.

68. Shipping manifest records, obtained in early September 2017 under the Freedom of Information Act from U.S. Customs and Border Patrol records, revealed a number of interesting facts, many of which surprised Plaintiffs and some that did not.

a.   Plaintiffs were not surprised by the first three shipping records:

i.   On September 12, 2016, a 15,276 kilogram shipment comprising 650 Cartons of "J Shape Polyester Pillow[,] U Shape Polyester Pillow[,] U Shape Pillow Cover[,] J Shape Polyester Pillow[,] U Shape Polyester Pillow[,] U Shape Pillow Cover" under bill of lading number

ELZLSHA16080884 and Invoice Number 16SG0711-3 (dated Aug. 19, 2016) was shipped from Shanghai, China by Saint Glory Hometextile Co., Ltd. via the Port of Long Beach, California to Consignee Pharmedoc, Inc. at 16325 Avalon Boulevard, Gardena, California 90248.

ii.  On September 28, 2016, a 23,683 kilogram shipment comprising 1,000 cartons of J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] J Shape Pillow Cover[,] U Shape Polyester Pillow[,] U Shape Polyester Pillow[,] U Shape Pillow Cover[.]" under bill of lading number EGLV142657914501 and Invoice Number 16SGL0711-4 (dated September 5, 2016) was shipped from Shanghai, China by Saint Glory Hometextile Co., Ltd. via the Port of Long Beach to Consignee Pharmedoc, Inc. at 16325 South Avalon Boulevard, Gardena, CA 90248; Office Phone Number 213-986-8599 and Cell Phone Number 747-229-XXXX.

iii.  On October 31, 2016, a 12,979 kilogram shipment

comprising 551 cartons of J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] U Shape Polyester Pillow[,] U Shape Pillow Cover[,] Down Topper[,] Down Pillow[,] Down Comforter" under bill of lading number EGLV142657038450 and Invoice Number 16SGL0711-5 (dated Sept. 30, 2016) was shipped from Shanghai, China by Saint Glory Hometextile Co., Ltd., via the Port of Los Angeles, California to Consignee Pharmedoc, Inc. at 16325 South Avalon Boulevard, Gardena, CA 90248; Office Number 213-986-8599.

b.   Following commencement of the Oklahoma Patent Action, the shipping records were a little harder for Plaintiffs to identify because the information regarding the shipper and the consignee were intentionally suppressed pursuant to 19 CFR 103.31(d). Because the importer still had to declare the type of goods that were being imported (i.e., "J Shape Polyester Pillow"), however, the shipping records were readily identified as follows:

i.   On December 12, 2016, a 7155 kilogram shipment

VERIFIED COMPLAINT - 25

comprising 300 cartons of "J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] J Shape Pillow Cover[.] This Shipment Contains No Solid Wooden Packing Materials" under bill of lading number EGLV142657066933 and Invoice Number 16SGL0711-7 (dated Nov. 10, 2016) was shipped from Shanghai, China to the Port of Los Angeles.

    ii.    On December 19, 2016, a 7155 kilogram shipment comprising 300 cartons of "J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] J Shape Pillow Cover[.] This Shipment Contains No Solid Wooden Packing Materials" under bill of lading number EGLV142657067123 and Invoice Number 16SGL0711-8 (dated Nov. 18, 2016) was shipped from Shanghai, China to the Port of Los Angeles.

    iii.    On December 26, 2016, a 7155 kilogram shipment comprising 300 cartons of "J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] J Shape Pillow Cover[.] This Shipment Contains No Solid Wooden Packing Materials[.] HS Code 94049040.63023199 Fax

323.231.2814" under bill of lading number EGLV142657069576 and Invoice Number 16SGL0711-9 (dated Nov. 25, 2016) was shipped from Shanghai, China to the Port of Los Angeles.

    iv.    On January 2, 2017, a 7155 kilogram shipment comprising 300 cartons of "J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] J Shape Pillow Cover[.] This Shipment Contains No Solid Wooden Packing Materials[.] Fax 323.231.2814" under bill of lading number EGLV142657074278 and Invoice Number 16SGL0711-10 (dated Nov. 29, 2016) was shipped from Shanghai, China to the Port of Los Angeles.

    v.    On January 16, 2017, a 7155 kilogram shipment comprising 300 cartons of "J Shape Polyester Pillow[,] J Shape Polyester Pillow[,] J Shape Pillow Cover[.] This Shipment Contains No Solid Wooden Packing Materials" under bill of lading number EGLV142657079229 and Invoice Number 16SGL0711-12/16SGL0906-2 (dated Dec. 5, 2016) was shipped from Shanghai, China to the Port of Los Angeles.

c.   After January 2017, the shipping records were even more difficult for Plaintiffs to trace because, not only was the information regarding the shipper and the consignee suppressed, but the description/name of the imported product was changed from "J-Shape" to "C-Shape" Polyester Pillow, on the following shipments:

i.   On January 31, 2017, a 13,619 kilogram shipment arrived in two containers: Container CXDU1204139 comprising 300 cartons of "C Shape Polyester Pillow[,] U Shape Polyester Pillow[,] C Shape Pillow Cover"; and Container CXDU2206671 comprising 305 cartons of "C Shape Polyester Pillow[,] U Shape Polyester Pillow[,] C Shape Pillow Cover" under bill of lading number DWCHSD701865 shipped to the Port of Los Angeles (hereinafter referred to as the "January 31, 2017 Shipment").

ii.   On February 6, 2017, an 11,752 kilogram shipment arrived in two separate containers: Container BMOU5215873 comprising 260 cartons of "C Shape Polyester Pillow"; and Container OCGU8095112

comprising 260 cartons of "C Shape Polyester Pillow[,] C Shape Polyester Pillow[.] This Shipment Contains No Solid Wood Packing Materials" under bill of lading number EGLV142601754125 and Invoice Number 16SGL1205-2 (dated Dec. 20th, 2016) was shipped to the Port of Los Angeles (hereinafter referred to as the "February 6, 2017 Shipment").

iii.    On April 25, 2017, a 26,580 kilogram shipment arrived in four separate containers: Container EISU8032452 comprising 300 cartons of "White C Shape Polyester Pillow"; Container EMCU8029800 comprising 308 cartons of "White C Shape Polyester Pillow"; Container EMCU8051547 comprising 300 cartons of "White C Shape Polyester Pillow"; and Container EMCU8068663 comprising 300 cartons of "White C Shape Polyester Pillow[,] White C Shape Polyester Pillow[,] Jersey C Shape Polyester Pillow[,] U Shape Polyester Pillow[.] This Shipment Contains No Solid Wood Packing Materials" under bill of lading number EGLV142700293878 and Invoice Number 16SGL1213-

1 (dated March 17, 2017) shipped to the Port of Long Beach (hereinafter referred to as the "April 25, 2017 Shipment").

iv.    On May 2, 2017, a 26,430 kilogram shipment arrived in four separate containers: Container CAIU5801895 comprising 300 cartons of "White C Shape Polyester Pillow"; Container EISU8066257 comprising 308 cartons of "White C Shape Polyester Pillow"; Container EMCU8033944 comprising 300 cartons of "White C Shape Polyester Pillow"; and Container EMCU8053220 comprising 300 cartons of "White C Shape Polyester Pillow[,] White C Shape Polyester Pillow[,] Jersey C Shape Polyester Pillow[,] U Shape Polyester Pillow[.] The shipment was under bill of lading number EGLV142700314221 and Invoice Number 16SGL1213-2 (dated March 24, 2017) shipped to the Port of Long Beach (hereinafter referred to as the "May 2, 2017 Shipment").

v.    On May 17, 2017, a 26,910 kilogram shipment arrived in four separate containers: Container EISU8031712

comprising 308 cartons of "White C Shape Polyester Pillow"; Container EISU8032745 comprising 308 cartons of "White C Shape Polyester Pillow"; Container EISU8068141 comprising 300 cartons of "White C Shape Polyester Pillow"; and Container EMCU8062135 comprising 300 cartons of "White C Shape Polyester Pillow[,] White C Shape Polyester Pillow[,] Jersey C Shape Polyester Pillow[,] U Shape Polyester Pillow[.] The Shipment Contains No Solid Wood Packing Materials" under bill of lading number EGLV142700478142 and Invoice Number 16SGL1213-3 (dated April 7, 2017) shipped to the Port of Long Beach (hereinafter referred to as the "May 17, 2017 Shipment").

vi.   On May 23, 2017, a 26,580 kilogram shipment arrived in four separate containers: Container EISU8064547 comprising 300 cartons of "White C Shape Polyester Pillow"; Container EMCU8024752 comprising 308 cartons of "White C Shape Polyester Pillow"; Container EMCU8066531 comprising 300 cartons of "White C

Shape Polyester Pillow"; and Container FSCU7033670 comprising 300 cartons of "White C Shape Polyester Pillow[,] White C Shape Polyester Pillow[,] Jersey C Shape Polyester Pillow[,] U Shape Polyester Pillow" under bill of lading number EGLV142700496671 and Invoice Number 16SGL1213-4 (dated April 19, 2017) shipped to the Port of Long Beach (hereinafter referred to as the "May 23, 2017 Shipment").

vii.     On June 20, 2017 a 26,785 kilogram shipment arrived in four separate containers: Container EISU8029150 comprising 300 cartons of "White C Shape Polyester Pillow"; Container EMCU8027258 comprising 300 cartons of "White C Shape Polyester Pillow"; Container EMCU8029707 comprising 300 cartons of "White C Shape Polyester Pillow"; and Container EMCU8062958 comprising 322 cartons of "White C Shape Polyester Pillow[,] White C Shape Polyester Pillow[,] Jersey C Shape Polyester Pillow[,] U Shape Polyester Pillow[,] U Shape Pillow Cover[.] This Shipment Contains No Solid Wood Packing Materials" under bill of lading

number EGLV14200655427 and Invoice Number 16SGL1213-5 (dated May 24, 2017) shipped to the Port of Long Beach, California (hereinafter referred to as the "June 20, 2017 Shipment").

viii.   On July 6, 2017, a 26,910 kilogram shipment arrived in four separate containers: Container OOLU9017486 comprising 308 cartons of "White C Shape Polyester Pillow[,] Jersey C Shape Polyester"; Container OOLU9026066 comprising 308 cartons of "White C Shape Polyester Pillow[,] Jersey C Shape Polyester" Container OOLU9034518 comprising 300 cartons of "White C Shape Polyester Pillow[,] Jersey C Shape Polyester"; and Container OOLU9046993 comprising 300 cartons of "White C Shape Polyester Pillow[,] Jersey C Shape Polyester" under bill of lading number OOLU2589650410 and Invoice Number 16SGL1213-6 (dated June 8, 2017) shipped to the Port of Long Beach (hereinafter referred to as the "July 6, 2017 Shipment").

ix.   On July 25, 2017, a 26,580 kilogram shipment arrived in four separate containers: Container OOLU9039063

VERIFIED COMPLAINT - 33

comprising 308 cartons of "White C Shape Polyester Pillow[,] Jersey C Shape Polyester"; Container OOLU9039926 comprising 300 cartons of "White C Shape Polyester Pillow[,] Jersey C Shape Polyester"; Container OOLU9045019 comprising 300 cartons of "White C Shape Polyester Pillow[,] Jersey C Shape Polyester"; and Container OOLU9066011 comprising 300 cartons of "White C Shape Polyester Pillow[,] Jersey C Shape Polyester" under bill of lading number OOLU2590480140 and Invoice Number 16SGL1213-7 (dated June 26, 2017) shipped to the Port of Long Beach (hereinafter referred to as the "July 25, 2017 Shipment").

69.     One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, imported, caused to be imported, and/or received the April 25, 2017 Shipment, as defined in paragraph 68(c)(iii), above.

70.     One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda

Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, imported, caused to be imported, and/or received the May 2, 2017 Shipment, as defined in paragraph 68(c)(iv), above.

71.     One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, imported, caused to be imported, and/or received the May 17, 2017 Shipment, as defined in paragraph 68(c)(v), above.

72.     One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, imported, caused to be imported, and/or received the May 23, 2017 Shipment, as defined in paragraph 68(c)(vi), above.

73.     One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, imported, caused to be imported, and/or received the June 20, 2017 Shipment, as defined in paragraph 68(c)(vii), above.

74.     One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda

Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, imported, caused to be imported, and/or received the July 6, 2017 Shipment, as defined in paragraph 68(c)(viii), above.

75.    One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, imported, caused to be imported, and/or received the July 25, 2017 Shipment, as defined in paragraph 68(c)(ix), above.

76.    The following chart illustrates the increased importation of the StGL Pillow from September 1, 2016 through August 1, 2017:



77.    Based on the interposition of Doctors-Deals, these shipping records, and intentional suppression of the consignee information, Leachco investigated further and discovered that five other businesses are co-located at 16325 South Avalon Boulevard, Gardena, CA with Defendant Pharmedoc, of which three

VERIFIED COMPLAINT - 36

publicly advertise their business as the importation of goods: Day to Day Imports, Inc., Oxgord, Inc., and Truly Commerce, Inc. For instance, Truly Commerce, Inc.'s facsimile number, 323.231.2814, is listed on the documents made available by U.S. Customs and Border Patrol.

78.     Upon reviewing records from the California Secretary of State's Office, Leachco learned that Corporate Defendants, Day to Day Imports, Inc., Oxgord, Inc., Truly Commerce, Inc., and Pharmedoc, Inc. have overlapping officers and directors. In particular:

a.     Defendant Yehuda Nourollah served as Secretary of Defendant Day to Day Imports, Inc.; Chief Executive Officer, Secretary, Chief Financial Officer, and Director of Defendant Oxgord, Inc.; Chief Executive Officer, Secretary, and Director of Defendant Pharmedoc, Inc.;

b.     Defendant Yosef Nourollah served as Chief Executive Officer, Director of Defendant Day to Day Imports, Inc.; and Director of Defendant Pharmedoc, Inc.; and

c.     Defendant Akiva Nourollah served as a Chief Executive Officer and Chief Financial Officer of Defendant Day to Day Imports, Inc.; Chief Financial Officer of Defendant Pharmedoc, Inc.; and Initial Agent, Chief Financial Officer of

VERIFIED COMPLAINT - 37

Defendant Truly Commerce, Inc.

79.     Plaintiffs now believe that the Defendants are playing a shell game with the Infringing Goods to shield discovery of and, ultimately, liability for all of the Infringing Goods that are being imported into the United States, offered for sale in the United States, and sold in the United States.

80.     Defendants Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; and Yaakov Nourollah are the moving, active, conscious force behind the patent infringement alleged herein, as will likely be shown after a reasonable opportunity for discovery. For instance, Yakov Kroll's cell phone number, 747.229.XXXX, is listed on the documents made available by U.S. Customs and Border Patrol.

81.     On information and belief, Defendants do not pay proper respect for the corporate form.

## THE TRADEMARK INFRINGEMENT/FALSE ADVERTISING/UNFAIR COMPETITION

82.     One or more of Defendants Pharmedoc, Inc.; Day to Day Imports, Inc.; Oxgord, Inc.; and Truly Commerce, Inc. uses various forms of advertising media, including the Pharmedoc.com website, internet advertising, and advertising specifically within and via Amazon.com, to communicate with customers and potential customers in order to promote and offer for sale the StGL

VERIFIED COMPLAINT - 38

Pillow.

83.     Defendants Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; and Yaakov Nourollah; are the moving, active, conscious force behind the trademark infringement, false advertising and unfair competition claims alleged herein, as will likely be shown after a reasonable opportunity for discovery.

84.     Below is a true and correct copy of the header from Pharmedoc.com downloaded from the Internet on October 4, 2017.



85.      As more readily apparent from the excerpt of the header above shown below, the Pharmedoc.com website exploits the configuration trademark of the Leachco Snoogle® as a product category identifier/icon to sell maternity pillows including the StGL Pillow.

VERIFIED COMPLAINT - 39

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

86.     The Snoogle® Total Body Pillow was first introduced into the marketplace in late October 1999. Leachco's Snoogle® product configuration has garnered distinctiveness through secondary meaning—i.e., consumers have come to recognize the shape and configuration of the Snoogle® Total Body Pillow as a mark thereby indicating Leachco as the source of the goods.

87.     Furthermore, the true and correct excerpt of the StGL Pillow product page on Amazon.com reproduced below employs a confusingly similar image to the image used by Leachco to advertise the Snoogle® Total Body Pillow.



88.     Defendant Pharmedoc has utilized the advertising images of Leachco's Snoogle® to enhance sales of the StGL Pillow.

89.     In addition to selling the StGL Pillow on Amazon.com, Doctors-Deals claims to also be selling the Snoogle® for $79.95+free shipping. In fact,

Doctors-Deals also claimed to have one Snoogle® left in stock.



90.     However, when someone attempted to order a Snoogle® from Doctors-Deals on Leachco's behalf, the order was cancelled without explanation. Consequently, it appears that Doctors-Deals never really had any Snoogle® in stock, as will likely be shown after a reasonable opportunity for discovery.

91.     The reason for Doctors-Deals' false offer becomes clear when viewing the Doctors-Deals Storefront on Amazon.com. A true and correct copy of the top of the Doctors-Deals Storefront on Amazon in early September 2017 is shown below (with the portion in the box magnified below):

VERIFIED COMPLAINT - 41





92.     As shown in the magnified view of the Doctors-Deals Amazon Storefront, Doctors-Deals was offering to sell the Snoogle® for $79.95. That price would be $30 more than the $49.95 price Leachco was offering the Snoogle® for on Amazon in early September 2017. More importantly, if Doctors-Deals actually had a Snoogle® Total Body Pillow to sell, this $79.95 price would make the Snoogle® Total Body Pillow nearly twice Doctors-Deals' $39.95 selling price of the StGL Pillow. Thus, by falsely offering a Snoogle® at an inflated price, Doctors-Deals makes the StGL Pillow appear to be half the price of the Snoogle® Total Body Pillow, when in truth it was only $10 cheaper at that time.

VERIFIED COMPLAINT - 42

93.   The Pharmedoc.com website claims that the StGL Pillow was designed in California. This statement is false and misleading because the statement either confused or had the capacity to confuse purchasers and potential purchasers into believing that someone associated with the StGL Pillow was the original innovator or designer of the J-Shaped Full Body Pillow. However, Plaintiff Jamie Leach was the original innovator of the Snoogle® Total Body Pillow, which she designed in Oklahoma.

94.   Defendant Pharmedoc or one or more of the other defendants acting in Pharmedoc's name and/or in concert with Pharmedoc advertises on Amazon.com, adjacent a photo of the StGL Pillow, that its products "are manufactured with 15% more material than our competitors."





95.   The Snoogle® Total Body Pillow competes with the StGL Pillow. The StGL Pillow does not have 15% more material than the Snoogle® Total

Body Pillow.

96.   Defendant Pharmedoc and one or more other Defendants are using the Snoogle® configuration trademark, the foregoing false and misleading statements, and advertising techniques while promoting the sales of the StGL Pillow through the Pharmedoc.com website and other third-party websites, such as Amazon.com. These acts are likely to deceive customers' purchasing decisions resulting in harm to Plaintiff Leachco.

97.   Defendant Pharmedoc and those acting in concert with it make these false representations in an effort to increase the perceived value of their full body pillow to increase sales and position themselves as a legitimate alternative to Leachco's Snoogle® Total Body Pillow.

98.   Purchasers of the StGL Pillow are likely to be misled and deceived by Defendants' marketing and advertising statements. By the use of marketing and promotional materials that claim the StGL Pillow is half the retail price of the Snoogle® Total Body Pillow, but has 15% more materials than the Snoogle®, and was designed in California. None of these representations is true.

99.   Defendants' false and misleading advertising is damaging to the reputation and goodwill of Leachco and is damaging to the consuming public.

100.   These false and misleading representations are designed to entice consumers to purchase the StGL Pillow over the Leachco Snoogle®.

101.  The natural, probable, and foreseeable result of Defendants' wrongful conduct has been to cause confusion, deception, and mistake amongst consumers for full body pregnancy pillows, resulting in injury to Leachco's business and goodwill, and to injure Leachco's relationships with existing and prospective customers.

102.  Defendants' wrongful conduct has resulted in increased sales of the StGL Pillow while hindering the sales of Leachco's Snoogle® and damaging its goodwill. Leachco has sustained and will continue to sustain damages as a result of Defendants' wrongful conduct.

103.  Plaintiffs have been damaged and are likely to further be damaged by the false and misleading statements used throughout the Pharmedoc.com website and third-party distributor websites, including damage to Plaintiffs' sales, profits, business, business reputation, and customer goodwill.

## COUNT I
## DIRECT INFRINGEMENT OF THE '164 PATENT

## (AGAINST ALL DEFENDANTS EXCEPT
## DEFENDANT PHARMEDOC)

104.  Plaintiffs incorporate and reallege paragraphs 1-103 herein by reference.

105.  This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271(a).

VERIFIED COMPLAINT - 45

106.   To the extent any marking was required by 35 U.S.C. 287, holders in interest of the '164 Patent complied with such requirements at all times pertinent to the present allegations.

107.   Defendants are directly infringing, literally infringing, and/or infringing the '164 Patent under the doctrine of equivalents. Defendants are thus liable for direct infringement of the '164 Patent pursuant to 35 U.S.C. § 271(a), as will likely be shown after a reasonable opportunity for discovery.

108.   Defendants have directly infringed and continue to infringe the '164 Patent in this Judicial District and elsewhere in the United States, without the consent of Plaintiffs, by or through importing, making, using, offering to sell, or selling a StGL Pillow, which infringes the '164 Patent.

109.   Defendants have been and are now infringing claims 1, 3, and 4 of the '164 Patent in this Judicial District and elsewhere in the United States, by, among other things, directly making, using, selling and/or offering for sale a StGL Pillow via online websites such as www.pharmedoc.com, www.amazon.com, www.bedbathandbeyond.com, www.walmart.com, www.overstock.com, www.ebay.com, www.wayfair.com, www.jet.com, www.staples.com, www.quill.com, for example but not by way of limitation.

110.   Defendants were aware of the '164 patent. First, Leachco marks the patent number on its product. Second, Defendants were put on notice of the patent

and their infringement at least as early as September 2016 due to the filing of the Oklahoma Patent Action. Thus, Defendants had constructive as well as actual knowledge that their alleged acts would constitute infringement of the '164 Patent and yet, Defendants elected to pursue the actions described herein in wanton disregard of the Plaintiffs' exclusive rights.

111.   Plaintiffs have been substantially and irreparably harmed by Defendants' infringing conduct and will continue to be irreparably damaged as a result of such injurious conduct. Defendants' actions complained of herein will continue unless Defendant is enjoined by this court.

112.   Defendants are, therefore, liable to Plaintiffs in an amount that adequately compensates them for the Defendants' infringement of the '164 Patent, which, by law, cannot be less than reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

113.   As a result of Defendants' willful infringement of the '164 Patent, Plaintiffs are further entitled to an award of attorneys' fees and up to treble damages from Defendants under 35 U.S.C. § 285.

114.   Plaintiffs are further entitled to an injunction prohibiting Defendants from continuing the infringing acts.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## COUNT II
## <u>INDUCEMENT TO INFRINGE '164 PATENT</u>

### (AGAINST ALL DEFENDANTS EXCEPT DEFENDANT PHARMEDOC)

115.   Plaintiffs incorporate and reallege paragraphs 1 through 114 herein by reference.

116.   This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271(b).

117.   Individual Defendants Yakov Kroll, Eli Kroll, Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah, and Yaakov Nourollah, and one or more of John Does 1-10 knowingly and actively assisted in Defendants Day to Day Imports, Oxgord, Truly Commerce, Pharmedoc's, and/or one or more of John Does 1-10 direct infringement of the '164 Patent.

118.   Individual Defendants Yakov Kroll, Eli Kroll, Yehuda Nourollah, Akiva Nourollah, Yosef Nourollah, and Yaakov Nourollah, and one or more of John Does 1-10 had knowledge of the '164 Patent and its relation to the Snoogle® Total Body Pillow and knew or should have known their actions would have induced one or more of Defendants Day to Day Imports, Inc., Oxgord, Inc., Truly Commerce, Inc., Pharmedoc, Inc., and/or John Does 1-10 to infringe the '164 Patent.

119.   Defendants possessed the subjective belief that there was a high probability that the StGL Pillow infringes the '164 patent. Proof of this willful knowledge is readily demonstrated by the decision made by one or more of the defendants to change the name of the StGL Pillow product from "J-Shaped" to "C-Shaped," after all, the title of the '164 patent is "Body Pillow with Horseshoe-Shaped Top and J-Shaped Bottom." Alternatively, to the extent any of the Defendants did not have such knowledge, Defendants possessed the subjective belief that there was a high probability that that that the Snoogle® was patented and took deliberate steps to avoid acknowledging that fact. Thus, willfully blinding themselves to the infringing nature of the StGL Pillow.

120.   Plaintiffs have been substantially and irreparably harmed by Defendants' infringing conduct and will continue to be irreparably damaged as a result of the induced infringing activities. Defendants' actions complained of herein will continue unless Defendant is enjoined by this court.

121.   Defendants are, therefore, liable to Plaintiffs in an amount that adequately compensates for the Defendants' induced infringement of the '164 Patent, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

122.   As a result of the Defendants' willful infringement of the '164 Patent, Plaintiffs are further entitled to an award of attorneys' fees and up to

VERIFIED COMPLAINT - 49

treble damages from Defendants under 35 U.S.C. § 285.

123.   Plaintiffs are further entitled to an injunction prohibiting Defendants from continuing the infringing acts.

## COUNT III
## FEDERAL UNFAIR COMPETITION AND FALSE
## DESIGNATION OF ORGIN (15 U.S.C. § 1125(a))

### (AGAINST DEFENDANTS DAY TO DAY IMPORTS, INC., OXGORD, INC, TRULY COMMERCE, INC., PHARMEDOC, INC., AND JOHN DOE 1)

124.   Plaintiff Leachco incorporates and realleges paragraphs 1 through 123 herein by reference.

125.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, is using in interstate commerce a configuration trademark uniquely associated by the consuming public with Plaintiff Leachco, to falsely designate the origin of the StGL Pillow in violation of 15 U.S.C. § 1125(a)(1)(A).

126.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, use in interstate commerce of a configuration trademark uniquely associated by the consuming public with Plaintiff Leachco has injured Leachco's commercial interest in its sales and

VERIFIED COMPLAINT - 50

profits, its business, its business reputation, and its good will, in an amount of damages to be determined at trial.

127.   In so doing, one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, has caused and, unless and until such acts are restrained and enjoined by this Court, will continue to cause great and irreparable injury to Plaintiff Leachco.

128.   Plaintiff Leachco has no adequate remedy at law for the wrongful acts of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery.

129.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, has realized revenue and profits by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled.

130.   As a result of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, actions, Plaintiff Leachco has suffered and will continue to suffer damages in an amount to be

VERIFIED COMPLAINT - 51

proven at trial.

## COUNT IV
## FEDERAL FALSE ADVERTISING (15 U.S.C. § 1125(a))

### (AGAINST DEFENDANTS DAY TO DAY IMPORTS, INC., OXGORD, INC, TRULY COMMERCE, INC., PHARMEDOC, INC., AND JOHN DOE 1)

131.   Plaintiff Leachco incorporates and realleges paragraphs 1 through 130 herein by reference.

132.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, actions alleged in this complaint constitute false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

133.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified after a reasonable opportunity for discovery, has made literally false, as well as false and misleading, statements of fact related to its history of developing the StGL Pillow, the size of the StGL Pillow versus the Snoogle®, and the relative prices of the Snoogle® Total Body Pillow and the StGL Pillow. Such false statements include but are not limited to false and misleading statements of fact that are found on the www.Pharmedoc.com website, the Amazon.com website,

and other advertising communications, as will likely be shown after a reasonable opportunity for discovery.

134.   One or more of Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, false statements of fact are commercial speech introduced into interstate commerce for the purpose of promoting Defendants' business associated with the StGL Pillow products as well as the products, themselves.

135.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, and Plaintiff Leachco directly compete against each other for customers and potential customers of full body pregnancy pillows.

136.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, false and misleading statements actually deceived or tended to deceive a substantial portion of the intended audience of potential customers and customers into believing, among other things, that Defendant Pharmedoc was the innovator and/or developer of the StGL Pillow that is identical and replaceable for Leachco's Snoogle® Total Body

Pillow, the size of the StGL Pillow versus the Snoogle® Total Body Pillow, and the relative prices of the Snoogle® Total Body Pillow and the StGL Pillow.

137.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, false and misleading statements and consequential deception of its customers and potential customers have injured Leachco's commercial interest in its sales and profits, its business, its business reputation, and its good will, in an amount of damages to be determined at trial.

138.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, identified acts have caused and, unless and until such acts are restrained and enjoined by this Court, will continue to cause great irreparable injury to Leachco.

139.   Plaintiff Leachco has no adequate remedy at law for the wrongful acts of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery.

140.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, has realized revenue and profits

by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled.

141.   As a result of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, actions, Plaintiff Leachco has suffered and will continue to suffer damages in an amount to be proven at trial.

**COUNT V**
**CONTRIBUTORY TRADEMARK INFRINGEMENT**

**(AGAINST DEFENDANTS DAY TO DAY IMPORTS, INC.,
OXGORD, INC, TRULY COMMERCE, INC., PHARMEDOC, INC.,
YAKOV KROLL, ELI KROLL, YEHUDA NOUROLLAH, AKIVA
NOUROLLAH, YOSEF NOUROLLAH, YAAKOV NOUROLLAH,
AND JOHN DOES 1-10)**

142.   Plaintiff Leachco incorporates and realleges paragraphs 1 through 141 herein by reference.

143.   The actions of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, as will be identified following a reasonable opportunity for discovery, described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the Leachco's Snoogle®

VERIFIED COMPLAINT - 55

configuration mark, and confusingly similar variations thereof, in commerce to advertise, market, and sell Defendants' StGL Pillow throughout the United States and California, constitute contributory trademark infringement in violation of federal law and the common law of the State of California.

144.   On information and belief, the actions of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, as will be identified following a reasonable opportunity for discovery, described above were and continue to be deliberate and willful.

145.   The actions of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, as will be identified following a reasonable opportunity for discovery, if not enjoined, will continue.

146.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10's, as will be identified following a reasonable opportunity for discovery, identified acts injured Leachco's commercial interest in its sales and profits, its

business, its business reputation, and its good will, in an amount of damages to be determined at trial.

147.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10's, as will be identified following a reasonable opportunity for discovery, identified acts have caused and, unless and until such acts are restrained and enjoined by this Court, will continue to cause great irreparable injury to Leachco.

148.   Plaintiff Leachco has no adequate remedy at law for the wrongful acts of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, as will be identified following a reasonable opportunity for discovery.

149.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, as will be identified following a reasonable opportunity for discovery, has realized revenue and profits by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled.

150.   As a result of one or more Defendants Day to Day Imports, Inc.;

Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10's, as will be identified following a reasonable opportunity for discovery, identified acts, Plaintiff Leachco has suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT VI
## VICARIOUS TRADEMARK INFRINGEMENT

**(AGAINST DEFENDANTS DAY TO DAY IMPORTS, INC., OXGORD, INC, TRULY COMMERCE, INC., PHARMEDOC, INC., YAKOV KROLL, ELI KROLL, YEHUDA NOUROLLAH, AKIVA NOUROLLAH, YOSEF NOUROLLAH, YAAKOV NOUROLLAH, AND JOHN DOES 1-10)**

151.   Plaintiff Leachco incorporates and realleges paragraphs 1 through 150 herein by reference.

152.   The actions of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, as will be identified following a reasonable opportunity for discovery, described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the Leachco Snoogle® configuration mark, and confusingly similar variations thereof, in commerce to advertise, market, and sell the StGL Pillow throughout the United States and,

specifically in California, constitute vicarious trademark infringement in violation

federal law and the common law of the State of California. Defendants each have

the ability to control the actions of the other Defendants, fund the advertising

activities of each of the Defendants, and derive a direct financial benefit from the

illegal acts of the Defendants.

153.   On information and belief, the actions of one or more Defendants

Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.;

Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah;

Yaakov Nourollah; and John Does 1-10, as will be identified following a

reasonable opportunity for discovery, described above were and continue to be

deliberate and willful.

154.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.;

Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda

Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does

1-10's, as will be identified following a reasonable opportunity for discovery,

identified acts injured Leachco's commercial interest in its sales and profits, its

business, its business reputation, and its good will, in an amount of damages to be

determined at trial.

155.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.;

Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda

Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10's, as will be identified following a reasonable opportunity for discovery, identified acts have caused and, unless and until such acts are restrained and enjoined by this Court, will continue to cause great irreparable injury to Leachco.

156.   Plaintiff Leachco has no adequate remedy at law for the wrongful acts of one or more one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, as will be identified following a reasonable opportunity for discovery.

157.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10, as will be identified following a reasonable opportunity for discovery, has realized revenue and profits by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled.

158.   As a result of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Pharmedoc, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yosef Nourollah; Yaakov Nourollah; and John Does 1-10's, as will be identified following a reasonable opportunity for discovery, identified acts, Plaintiff Leachco has suffered and will continue to

suffer damages in an amount to be proven at trial.

## COUNT VII
## COMMON LAW TRADEMARK AND
## <u>CONFIGURATION MARK INFRINGEMENT</u>

### (AGAINST DEFENDANTS DAY TO DAY IMPORTS, INC., OXGORD, INC, TRULY COMMERCE, INC., PHARMEDOC, INC., AND JOHN DOE 1)

159.   Plaintiff Leachco hereby incorporates and realleges paragraphs 1-158 herein by reference.

160.   Leachco hereby alleges common law trademark and configuration mark infringement in violation of California common law.

161.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, use of Leachco's Snoogle® configuration mark constitutes trademark infringement and is likely to cause confusion, mistake, or to deceive in violation of California common law.

162.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, actions have been conducted willfully to divert sales from Plaintiff Leachco and inflict injury on Plaintiff Leachco.

163.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.;

Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, identified acts injured Leachco's commercial interest in its sales and profits, its business, its business reputation, and its good will, in an amount of damages to be determined at trial.

164.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, identified acts have caused and, unless and until such acts are restrained and enjoined by this Court, will continue to cause great irreparable injury to Leachco.

165.   Plaintiff Leachco has no adequate remedy at law for the wrongful acts of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery.

166.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, has realized revenue and profits by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled.

167.   As a result of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will

be identified following a reasonable opportunity for discovery, identified acts, Plaintiff Leachco has suffered and will continue to suffer damages in an amount to be proven at trial.

### COUNT VIII
### CALIFORNIA UNFAIR COMPETITION
### (CAL BUS. & PROF. CODE § 17200)

**(AGAINST DEFENDANTS DAY TO DAY IMPORTS, INC., OXGORD, INC, TRULY COMMERCE, INC., PHARMEDOC, INC., AND JOHN DOE 1)**

168.   Plaintiffs incorporate and reallege paragraphs 1 through 167 herein by reference.

169.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, unfair or fraudulent business actions, and unfair, deceptive, untrue or misleading advertising is prohibited by Chapter 1 of Part 3 of Division 7 of the California Business and Professions Code.

170.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, have engaged in unfair competition and should, therefore, be enjoined by this Court, preventing Defendants from the use or employment by any person of any practice which

VERIFIED COMPLAINT - 63

constitutes unfair competition, as is necessary to restore the Plaintiffs' interests.

171.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, has realized revenue and profits by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled. Plaintiffs are entitled to Civil Penalties as indicated in Cal Bus. & Prof. Code § 17206.

172.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, identified acts injured Leachco's commercial interest in its sales and profits, its business, its business reputation, and its good will, in an amount of damages to be determined at trial.

173.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, identified acts have caused and, unless and until such acts are restrained and enjoined by this Court, will continue to cause great irreparable injury to Leachco.

174.   Plaintiff Leachco has no adequate remedy at law for the wrongful acts of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following

a reasonable opportunity for discovery.

175.  One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, has realized revenue and profits by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled.

176.  As a result of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, identified acts, Plaintiff Leachco has suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT IX
## CALIFORNIA COMMON LAW UNFAIR COMPETITION

### (AGAINST DEFENDANTS DAY TO DAY IMPORTS, INC., OXGORD, INC, TRULY COMMERCE, INC., PHARMEDOC, INC., AND JOHN DOE 1)

177.  Plaintiff Leachco incorporates and realleges paragraphs 1-176 herein by reference.

178.  One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, are willfully, fraudulently,

oppressively, maliciously and unlawfully attempting to pass off, and are actually passing off, the Infringing Goods as the Snoogle® Total Body Pillow.

179.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, use in commerce of the Plaintiff's advertising materials with respect to the Infringing Goods continues to confuse and deceive consumers as to the source of origin of the goods for which Plaintiff Leachco has invested substantial time, effort, and money in developing and further damages the Plaintiff's goodwill and reputation.

180.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, identified acts injured Leachco's commercial interest in its sales and profits, its business, its business reputation, and its good will, in an amount of damages to be determined at trial.

181.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, identified acts have caused and, unless and until such acts are restrained and enjoined by this Court, will continue to cause great irreparable injury to Leachco.

182.   Plaintiff Leachco has no adequate remedy at law for the wrongful

acts of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery.

183.   One or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1, as will be identified following a reasonable opportunity for discovery, has realized revenue and profits by virtue of its wrongful acts that they otherwise would not have obtained and to which they are not entitled.

184.   As a result of one or more Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc., Pharmedoc, Inc.; and John Doe 1's, as will be identified following a reasonable opportunity for discovery, identified acts, Plaintiff Leachco has suffered and will continue to suffer damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter:

A.     a temporary restraining order enjoining Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; Yakov Kroll; Eli Kroll; Yehuda Nourollah; Akiva Nourollah; Yaakov Nourollah; and Yosef Nourollah; and those acting in active concert with any of the foregoing named defendants from selling and/or offering to sell in the United States, and/or importing into the

United States the StGL Pillow.

B.   a judgment in favor of Plaintiff that Defendants (excluding Defendant Pharmedoc) have infringed the '164 Patent;

C.   a permanent injunction enjoining Defendants (excluding Defendant Pharmedoc) and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '164 Patent, or such other equitable relief the Court determines is warranted;

D.   a judgment and order requiring Defendants (excluding Defendant Pharmedoc) to pay to Plaintiffs damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '164 Patent as provided under 35 U.S.C. § 284, and an accounting of ongoing post-judgment infringement;

E.   a permanent injunction enjoining all Defendants from using any search engine search and/or advertising images and/or terms associated with Leachco's Snoogle®, or any such images and/or terms that are confusingly similar to Leachco's Snoogle®;

F.   a permanent injunction enjoining all Defendants from using any false or misleading statements which can or are likely to influence customers'

purchasing decisions of any full body pillow or related products;

G.      a judgment and order requiring all Defendants Pharmedoc, Inc.; Day to Day Imports, Inc.; Oxgord, Inc.; and Truly Commerce, Inc. to account to Plaintiff Leachco for all sales and profits from the sale of the StGL Pillow as a result of any false or misleading statements, or for any sum in addition to that amount the Court and/or jury awards;

H.      a judgment and order requiring Defendants Day to Day Imports, Inc.; Oxgord, Inc.; Truly Commerce, Inc.; and Pharmedoc, Inc. to each disgorge its profits and other ill-gotten gains resulting from its wrongful conduct;

I.      a judgment and order for Plaintiffs to be awarded punitive damages in view of Defendants wanton and deliberate illegal acts committed with oppression, fraud, and malice;

J.      a judgment and order that this case be found exceptional and that Plaintiff Leachco be awarded attorneys' fees against all Defendants pursuant to 15 U.S.C. § 1117(a);

K.      a judgment and order allowing Plaintiffs to recover all taxable costs of this action, including reasonable attorneys' fees and both pre- and post-judgment interest; and

L.      any and all other relief, at law or equity, to which Plaintiff may show itself to be entitled.

VERIFIED COMPLAINT - 69

## DEMAND FOR A JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: October __4___, 2017

Respectfully submitted,


/s/ Samuel R. Watkins
Samuel R. Watkins

-and-

Douglas J. Sorocco (of counsel)
Evan W. Talley (of counsel)

-and-

Jordan A. Sigale (of counsel)

**ATTORNEYS FOR PLAINTIFFS
JAMIE S. LEACH AND LEACHCO, INC.**

VERIFIED COMPLAINT - 70

**VERIFICATION**

State of _Oklahoma_          )

County of _Pontotoc_          )  : ss.

      Jamie Leach, being duly sworn, under penalty of perjury, deposes and says:

      1.   I am over eighteen (18) years of age and mentally competent to testify in this matter, and from firsthand knowledge state:

      2.   I am the Co-Founder and Executive Vice President of Leachco, Inc., a plaintiff in the foregoing action.

      3.   I have read the foregoing Verified Complaint, and can state that its factual contents are true and based upon my personal knowledge, except as to all matters alleged upon information and belief, which matters I believe to be true based on my review of pertinent documents and conversations with persons with knowledge.

_Jamie Leach_
Jamie Leach

Sworn before me this

_6_ day of _October_, 2017

_Tonya Barrett_
Notary Public

TONYA BARRETT
Notary Public – State of Oklahoma
Commission Number 13001636
My Commission Expires Feb 19, 2021

VERIFIED COMPLAINT - 71

## **VERIFICATION**

State of _Oklahoma_ )

County of _Pontotoc_ ) : ss.

      Alex Leach, being duly sworn, under penalty of perjury, deposes and says:

      1.    I am over eighteen (18) years of age and mentally competent to testify in this matter, and from firsthand knowledge state:

      2.    I am the Chief Operating Officer of Leachco, Inc., a plaintiff in the foregoing action.

      3.    I have read the foregoing Verified Complaint, and can state that its factual contents are true and based upon my personal knowledge, except as to all matters alleged upon information and belief, which matters I believe to be true based on my review of pertinent documents and conversations with persons with knowledge.

_____
Alex Leach

Sworn before me this

_6_ day of _October_, 2017

_____
Notary Public

```
TONYA BARRETT
Notary Public – State of Oklahoma
Commission Number 13001636
My Commission Expires Feb 19, 2021
```

VERIFIED COMPLAINT - 72